IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No.      09-CR-1861 JEC

MARK CASTILLO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Mark Castillo's *Motion to Suppress Statement* (Doc. 89), filed August 12, 2010 ("Motion"). Having reviewed the Motion, the Government's *Response in Opposition to Defendant's Motion to Suppress Statement* (Doc. 96), filed August 25, 2010, having held an evidentiary hearing on Tuesday, September 21, 2010, and being otherwise fully informed in the premises, the Court will DENY the Motion.

I.   BACKGROUND

On March 19, 2008, Defendant was involved in an altercation with Fabian Cayaditto on the Navajo Reservation. He is charged with Assault with a Dangerous Weapon, Assault Resulting in Serious Bodily Injury, Using a Firearm During and in Relation to a Crime of Violence, and Felon in Possession of a Firearm and Ammunition. *Redacted Superseding Indictment* (Doc. 63), filed July 14, 2010.

Defendant was arrested on March 20, 2008. He contends that officers improperly questioned him prior to advising him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *Motion* at 4. To the extent that the Court finds to the contrary, Defendant also argues

that the statement he gave on March 20, 2008 was not voluntary due to coercive police activity. *Id*. The Government claims that "[t]he [D]efendant's recollection of events is incorrect." *Resp.* at 4. Specifically, the Government asserts that Defendant was placed under arrest as soon as officers ascertained he was the Mark Castillo they were looking for, and FBI Special Agent Bourgeois read Castillo his *Miranda* rights immediately. *Id.* at 5-6.

## II.     LEGAL STANDARD

The Fifth Amendment states: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Relying on that provision, the Supreme Court has held that if police take a suspect into custody and interrogate him, they must inform him of his *Miranda* rights, or his responses cannot be introduced into evidence at trial to establish his guilt. *See Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). A statement may be deemed involuntary even if a suspect has been advised of his *Miranda* rights and properly waived them. *See United States v. Lopez*, 437 F.3d 1059, 1065 (10th Cir. 2006). Nonetheless, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." *Berkemer*, 468 U.S. at 433 n.20. The government bears the burden of showing by a preponderance of the evidence that the confession is voluntary. *Lopez*, 437 F.3d at 1063.

In order to be effective, a waiver must be made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. A court's inquiry into a waiver's validity has two "distinct dimensions." *Smith v. Mullin*, 379 F.3d 919, 932-33 (10th Cir. 2004). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Moran v. Burbine*, 475

2

U.S. 412, 421 (1986).  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  *Id.*  Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.  *Id*.  Further, the Government has the burden of showing "both an uncoerced choice and the requisite level of comprehension." *Id.*; *U.S. v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir.1996).

Whether statements are made voluntarily requires consideration of the totality of the circumstances, recognizing both the characteristics of the defendant and the details of the interrogation.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1976); *Lopez*, 437 F.3d at 1063.  Factors relevant to that inquiry include: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment."  *Id.*  Ultimately, the Court must determine whether Castillo's confession is the product of an essentially free and unconstrained choice or if his will was overborne by physical or psychological coercion, threats, or by improper inducement.  *See Lopez*, 437 F.3d at 1063; *United States v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998).  A confession is only involuntary if interrogating officers use coercive activity to undermine the suspect's ability to exercise free will.  *Erving L.*, 147 F.3d at 1249.

III.    DISCUSSION

    A.    The Court's Findings of Fact

Early in the morning on February 20, 2008, law enforcement officers from the Navajo Nation and the Federal Bureau of Investigation–somewhere between five and ten officers in all

and five or six law enforcement vehicles–arrived at the home of Defendant Mark Castillo.  The officers approached the house "tactically."  In other words, FBI Special Agent Benedict Bourgeois and Navajo Nation Investigator Benjamin Yazzie knocked at the front door with their handguns drawn, while the remaining five or six officers from the Navajo Nation Police formed a semi-circle around the house with rifles drawn.  Spotlights were directed at Defendant's home throughout this encounter.

Having sufficient information to link Defendant to the assault of Fabian Cayaditto on March 19, 2008, Agent Bourgeois advised Defendant that he had been identified as the person who shot Mr. Cayaditto.  Defendant then agreed to accompany Agent Bourgeois to an FBI Chevrolet Suburban for questioning.  Defendant was seated in the right front passenger seat, with Agent Bourgeois in the driver's seat and Investigator Yazzie seated in the backseat directly behind Defendant.  Neither Agent Bourgeois nor Investigator Yazzie had their weapons drawn inside the vehicle.  Defendant was not handcuffed during this encounter.

Prior to questioning Defendant, Agent Bourgeois read Defendant his *Miranda* rights aloud from an FBI form, as follows,

> Before we ask you any questions, you must understand your rights.
> You have the right to remain silent.  Anything you say can be used
> against you in court.  You have the right to talk to a lawyer for
> advice before we ask you any questions.  You have the right to
> have a lawyer with you during questioning.  If you cannot afford a
> lawyer, one will be appointed for you before any questioning if
> you wish. If you decide to answer questions now without a lawyer
> present, you have the right to stop answering at any time.

Agent Bourgeois then provided the FBI form with these rights printed on it to Defendant and asked Defendant if he had any questions.  After Defendant indicated he wished to go ahead and answer questions without a lawyer present, Agent Bourgeois asked Defendant to read aloud the

portion of the form entitled "Waiver of Rights." Defendant read the form aloud in English, stating "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Defendant then signed the form. Agent Bourgeois and Investigator Yazzie also signed the form as witnesses to Defendant's waiver of *Miranda* rights.

At no time did Agent Bourgeois or Investigator Yazzie coerce or pressure Defendant to obtain his signature waiving *Miranda* rights. Both Agent Bourgeois and Investigator Yazzie were confident that Defendant understood. Had Defendant expressed concern or discomfort at speaking with law enforcement in English rather than the Navajo language, Investigator Yazzie speaks Navajo and could have translated. Neither Agent Bourgeois nor Investigator Yazzie felt that Defendant was unable to understand or communicate effectively in English.

Over the next half-hour or so, Defendant was forthcoming in answering the questions of law enforcement. He advised officers that he and his wife and two male passengers had just returned to Torreon from a shopping trip to Cuba, New Mexico, during which he and one of the passengers, Ryan Begay, drank most of an 18-pack of beer. Defendant reported that he and his traveling companions encountered Fabian Cayaditto at the Red Mesa convenience store in Torreon. One of the passengers in Defendant's car, Ryan Begay, began arguing with Mr. Cayaditto, and their argument escalated into a fist fight. Defendant advised officers that he tried to break up the fight, but Mr. Cayaditto then armed himself with an axe that was in the back of his truck. Someone else then took another axe from the back of Mr. Cayaditto's truck, which was filled with freshly-cut firewood at the time. At this point, there were at least three people involved in the fight—Mr. Cayaditto, Mr. Begay, and Mr. Castillo—and two of them were armed with axes. Mr. Cayaditto retreated into the Red Mesa store and held the doors closed.

Defendant advised officers that he believed the altercation was over, and he and his companions headed for home, with Defendant's wife driving. Cayaditto followed them in his truck and rear-ended their car. At this point, Defendant advised that he asked his passenger, Floyd Showalter, to reach through a hatch in the back seat and grab Defendant's shotgun, which was in the trunk. After his passenger handed him the gun, Defendant got out of the car, and fired one bird shot shell at the windshield of Cayaditto's truck and another at the front grill. Defendant watched Cayaditto back up and drive away, heading back toward the convenience store. He and his passengers then drove to his home in Torreon.

### B.     Analysis of Suppression Issues

There are no facts in the present case upon which to find that Defendant's statement should be suppressed. The Government does not dispute that Defendant was in custody from the outset of their interaction. FBI Special Agent Bourgeois testified that he *Miranda*-ized Defendant immediately after he was arrested. Investigator Yazzie of the Navajo Nation Police confirms Agent Bourgeois' version of events, testifying that Bourgeois read Defendant his *Miranda* rights as soon as Defendant had been identified, before asking any substantive questions about the alleged assault.

Defendant acknowledges he signed the Advice of Rights form, but testified he is not sure if anyone read him his rights out loud. In any case, Defendant testified he was asked questions before anyone read him his rights, although he is not sure what information he gave to officers before he received *Miranda* warnings. When asked directly if he was telling the Court that Agent Bourgeois' testimony was incorrect or that Agent Bourgeois was lying, Defendant testified he was "not sure." In the short amount of time that Defendant took the stand, his version of the events of March 20, 2008 was inconsistent and confused. The Court finds that

Defendant's testimony, particularly his statement indicating he was not immediately *Miranda*-ized, is not credible.

The Court also sees no evidence to support a finding that Defendant's statement was not voluntary.  Defendant verified that he signed the waiver of his *Miranda* rights, acknowledging his rights to refuse to answer questions and to have an attorney present.  His age, intelligence, and education demonstrate he was capable of making a voluntary statement.  For instance, Defendant attended high school, and his exchange with counsel at the hearing on the Motion to Suppress as well as the written statement he provided on March 20, 2008 indicate he can competently communicate in English.  The questioning in this case was limited to approximately thirty minutes, according to the testimony of Agent Bourgeois.  Moreover, the circumstances under which Defendant was questioned were not coercive so as to render Defendant's statement involuntary.  There is no evidence in this case that Defendant was subject to physical punishment.

## IV. CONCLUSION

WHEREFORE, IT IS ORDERED that Defendant's *Motion to Suppress Statement* (Doc. 89), filed August 12, 2010, is DENIED.

Dated September 23, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Roberto D. Ortega, AUSA
Albuquerque, NM

Counsel for Defendant:

John F. Samore, Esq.
Albuquerque, NM